NO. 07-08-0483-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JANUARY 8, 2010
______________________________

IN THE INTEREST OF T.A.N., A CHILD
_________________________________

FROM THE 251ST DISTRICT COURT OF RANDALL COUNTY;

NO. 34,964-C; HONORABLE ANA ESTEVEZ, JUDGE
_______________________________


Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
MEMORANDUM OPINION
          Appellant, Bobby Don Nokes, appeals an Order in Suit to Modify Parent-Child
Relationship that found that Nokes’s son, Thomas, is disabled and ordered Nokes to pay
current and retroactive child support. We will reverse and remand in part and affirm in part.
Background
          Nokes and Tammie Fay Browning, appellee, divorced in 1991 and Browning was
awarded primary conservatorship of their three children. Soon after the divorce, Thomas,
the youngest child, was diagnosed with osteosarcoma, a form of cancer, which manifested
itself in his left leg. Thomas underwent surgery to remove the cancer, chemotherapy, and
subsequent surgeries to accommodate for growth of the leg. Thomas was making
satisfactory progress in recovering from the cancer until he suffered an accident at a Wal-Mart store when he was 11 years old. The accident significantly set back Thomas’s
progress.
          Following this accident, Wal-Mart settled Thomas’s personal injury claims. The
settlement paid Thomas a lump sum payment of $478,000. This money was used to pay
attorney’s fees, medical bills, and to purchase Thomas a house that was held in trust. 
Additionally, beginning September 1, 2006, Thomas began to receive an annuity that paid
him $540 per month, increasing at three percent compounded annually. The settlement
also provided that, on July 1, 2007, Thomas would begin to receive eight biennial
payments of $10,000. After those payments are exhausted, Thomas will receive payments
of $12,000 every five years for the remainder of his life. Thus, at the time of the hearing
on the present matter, Thomas was receiving approximately $550 per month as well as two
$10,000 payments every six months. In addition, upon turning 18 years old, Thomas’s
trustee deeded the house to Thomas.
          Nokes paid child support as ordered until Thomas turned 18, at which time the child
support withholding was terminated by the Attorney General’s Office. Soon after Thomas
turned 18, Nokes terminated Thomas’s health insurance coverage. Browning filed a
Petition to Modify that requested the trial court to continue child support and insurance
coverage beyond Thomas’s 18th birthday due to Thomas’s disability. 
          At the hearing on the modification request, Thomas’s doctor, Dr. Bush,


 testified that
Thomas’s left leg was significantly shorter than his right leg and that his skin is very fragile
due to the numerous surgeries that he has had on the leg. Dr. Bush testified that these
conditions may be improved in the future, but they will remain problems for the rest of
Thomas’s life. Dr. Bush further testified that Thomas would not be able to walk a mile
without assistance; his muscles have atrophied causing Thomas to be unable to do many
things that others can do; his ability to walk is limited due to his left leg being shorter than
his right leg which will cause other problems by throwing off Thomas’s normal mechanics;
and the only kind of work that Thomas could do would be sedentary work and, even then,
Thomas would have problems because he can not sit for extended periods of time. In
addition, Dr. Bush testified that Thomas is likely to have between three and ten additional
surgeries in his lifetime. Browning and Thomas testified that Thomas suffers tremendous
pain as a result of many of the procedures that he has to have performed and that the pain
limits his ability to concentrate. Further, they testified that Thomas has to have significant
assistance with even simple tasks, like putting on his socks, for some period of time
immediately following surgeries. While the terms of Thomas’s settlement with Wal-Mart
were proven at the hearing, there was also evidence offered of the cost of Thomas’s
ongoing medical treatments and adaptive equipment, such as a pair of shoes costing
$1,000. Evidence was admitted that established that Thomas has made gifts to his
mother, stepfather, and stepsister out of the money he has received through his Wal-Mart
settlement. 
          At the conclusion of the hearing, the trial court found that Thomas requires
substantial care and personal supervision because of a physical disability and is not
capable of self-support and the disability existed on or before Thomas’s 18th birthday. The
trial court ruled that Nokes was responsible for retroactive child support from September
of 2006 until May of 2007, when Thomas graduated from his home schooling and obtained
his GED. The trial court further ordered that current support would start in July of 2008 and
would be set at $300 per month until Thomas entered college at which time the support
“will increase to the normal child support for one child . . . .” The trial court also ordered
Nokes to maintain Thomas on Nokes’s health insurance for “as long as you can carry it”
and then, if Thomas acquires health insurance, both Nokes and Browning are ordered to
pay one third of the premium. The trial court entered an order reflecting these rulings,
however, the order states that, once Thomas enrolls in and attends college, Nokes’s child
support “shall increase to 20% of his net income, calculated as of his wages on July 1,
2008 . . . .” Nokes timely filed notice of appeal of this order.
          Nokes appeals by four issues. By his first issue, Nokes contends that the trial court
erred in failing to enter findings of fact and conclusions of law. By his second and third
issues, Nokes contends that the evidence was legally and factually insufficient to support
the trial court’s finding that Thomas requires substantial care and personal supervision
because of a physical disability and will not be capable of self-support. By his fourth issue,
Nokes contends that the trial court erred in setting Nokes’s child support at 20 percent of
his net income after Thomas enters college instead of setting an exact dollar amount.
Findings of Fact and Conclusions of Law
          By his first issue, Nokes contends that the trial court erred in failing to enter
requested findings of fact and conclusions of law. However, the trial court signed findings
of fact and conclusions of law on January 9, 2009 and the same were filed with the district
clerk on January 19, 2009. These findings and conclusions are part of the appellate
record. Consequently, Nokes’s first issue is moot.
Legal and Factual Sufficiency
          By his second and third issues, Nokes contends that the evidence was legally and
factually insufficient to support the trial court’s finding that Thomas requires substantial
care and personal supervision because of a physical disability and will not be capable of
self-support. A trial court can order a parent to provide for the support of a child for an
indefinite period if the court finds that the child requires substantial care and personal
supervision because of a mental or physical disability and will not be capable of self-support and the disability exists on or before the 18th birthday of the child. See Tex. Fam.
Code Ann. § 154.302(a) (Vernon 2008). Thus, Nokes’s second and third issues challenge
the evidentiary basis for the trial court’s continuing Nokes’s child support for Thomas. 
Specifically, Nokes challenges the sufficiency of the evidence to support: (1) that Thomas
requires substantial care and personal supervision because of physical disability and (2)
that Thomas will not be capable of self-support. 
          Findings of fact in a case tried to the court have the same force and dignity as a
jury’s verdict upon jury questions and are reviewable for legal and factual sufficiency. 
Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991). When an appellant
challenges the legal sufficiency of an adverse finding on an issue for which he did not have
the burden of proof, he must demonstrate that there is no evidence to support the adverse
finding. Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983). In a legal sufficiency
review, we must view the evidence in the light most favorable to the finding. Wal-Mart
Stores, Inc. v. Miller, 102 S.W.3d 706, 709 (Tex. 2003). Viewing the evidence through this
prism, we must ultimately determine whether the evidence is sufficient to enable
reasonable and fair-minded people to reach the verdict under review. City of Keller v.
Wilson, 168 S.W.3d 802, 827 (Tex. 2005). In reviewing factual sufficiency on an issue on
which appellant did not have the burden of proof, we consider and weigh all of the
evidence in a neutral light and set aside the judgment only if the evidence that supports the
challenged finding is so weak as to make the judgment clearly wrong and manifestly unjust. 
Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). While we review the factual sufficiency
of the evidence in a neutral light, the fact finder is the sole judge of the credibility of the
witnesses and the weight to be given their testimony. See Golden Eagle Archery, Inc. v.
Jackson, 116 S.W.3d 757, 761 (Tex. 2003). An appellate court may not impose its own
opinion to the contrary of the fact finder’s implicit credibility determinations. See id.
          Considering the legal sufficiency of the evidence to support the trial court’s
determination that Thomas requires substantial care and personal supervision, there is
evidence in the record that Thomas will be severely limited in his ability to care for himself
during periods immediately following surgeries and that Thomas is likely to have between
three and ten surgeries during the remainder of his life. Thomas was scheduled to have
one of these surgeries very soon after the modification hearing. In addition, evidence was
presented that Thomas would be unable or would be severely limited in his ability to do
certain mundane but necessary activities, such as shopping for groceries. Thomas
testified that he would be unable to drive himself to and from Dallas, where the bulk of his
medical care is provided. In fact, Thomas cannot drive when he is on pain medication,
which he takes as needed, and he is unable to predict when he will need to be on his pain
medication. Considering this evidence, we cannot say that the evidence was insufficient
to enable reasonable and fair-minded people to reach the verdict under review. City of
Keller, 168 S.W.3d at 827.
          Turning to the legal sufficiency of the evidence to establish that Thomas will not be
capable of being self-supporting, there was evidence presented that Thomas has
substantial medical expenses for both treatment and adaptive equipment. For example,
Thomas had a hip and femur replacement surgery in January of 2007 that cost
$223,548.41. Evidence was presented that a pair of shoes for Thomas costs around
$1,000. Even when Nokes had Thomas on his health insurance, evidence was presented
that Thomas’s uninsured medical expenses each year were between $60,000 and
$70,000. In addition, evidence established that Thomas could only work a sedentary
position. The evidence, viewed in the light most favorable to the verdict, supports the trial
court’s determination that Thomas would be incapable of self-support.
          Nokes contends that the evidence is factually insufficient to establish that Thomas
needs continuous care and personal supervision. However, the statutory requirement is
not that Thomas requires continuous care, only that he requires substantial care. See Tex.
Fam. Code Ann. § 154.302(a). In his brief, Nokes concedes that there are times that
Thomas needs substantial care and supervision, but that there are “long periods of time”
when Thomas does not need substantial care or any personal supervision. While the
evidence does not reflect that there are long periods of time when Thomas does not need
substantial care, the evidence does establish that there are times when Thomas requires
substantial care and, further, the evidence establishes that these times will recur in the
future. While there are times when Thomas may be capable of caring for himself, when
he has to take his pain medication, he is incapable of driving himself and must rely on the
assistance of his family. Because Thomas is incapable of predicting when he will need to
be on pain medication, in this respect, he is in need of continuous care. However, again,
the statutory standard requires that Thomas need substantial care and not continuous
care. Thus, we conclude that the evidence is factually sufficient to support that Thomas
needs substantial care and personal supervision.
          Nokes also contends that the evidence is factually insufficient to support the
determination that Thomas is incapable of self-support. Nokes’s contention centers on
Thomas’s ability to be financially self-sufficient. Nokes argues that the evidence
establishes that Thomas has only two financial responsibilities, $2,800 per year in property
taxes on his house and $350 per month for his vehicle payment, while having net monthly
resources of $2,207.47. However, as acknowledged by Nokes, the trial court ruled that
Thomas is responsible for all out-of-pocket medical expenses. Even without considering
prior outstanding medical bills, the evidence is such that it will certainly allow reasonable
people to conclude that Thomas will be wholly unable to pay for out-of-pocket medical
expenses, which typically runs around $60,000 to $70,000 per year when Thomas was
insured by Nokes; needed adaptive equipment, such as $1,000 shoes; and transportation
expenses for trips to and from Dallas. Further, the evidence establishes that Thomas will
be unlikely to find a job that he can perform without a college degree. Consequently, we
conclude that the evidence is factually sufficient to establish that Thomas is incapable of
being self-supporting.
          For the foregoing reasons, we overrule Nokes’s second and third issues.
Indefinite Support Upon Thomas Entering College
          By his fourth issue, Nokes contends that the trial court erred in setting Nokes’s child
support obligation after Thomas enters college at 20 percent of Nokes’s net income,
calculated as of his wages on July 1, 2008, rather than setting an exact dollar amount. An
ambiguous, indefinite, or uncertain child support order will not support a judgment for
arrearages and is unenforceable by contempt. See Templet v. Templet, 728 S.W.2d 844,
847 (Tex.App.–Beaumont 1987, no writ). As Browning points out in her brief, it appears
that the trial court intended for Nokes to provide specific net income information as of July
1, 2008 and for the child support upon Thomas entering college to be set at 20 percent of
this net income. However, the setting of this exact amount was not done. As the parties
agree that the child support obligation arising upon Thomas entering college needs to be
made definite and as this provision of the order may not be enforced as written, we will
reverse this portion of the order and remand to the trial court to set an exact amount for
Nokes’s child support obligation once Thomas enters college.
          We sustain Nokes’s fourth issue.
Conclusion
          We reverse that portion of the Order that sets Nokes’s child support obligation upon
Thomas entering college at 20 percent of Nokes’s net income, calculated as of his wages
on July 1, 2008, as determined by the Texas Family Code and remand to the trial court to
set an exact dollar amount of that child support obligation. In all other respects, we affirm
the Order.
 
                                                                           Mackey K. Hancock

                                                                                     Justice